CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 26 2012

JULIA C. DUDLEY, CLERK
BY: /s/
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DONELL J. BLOUNT, SR., | ) | CASE NO. 7:11CV00091 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| vs. | ) | |
| | ) | |
| | ) | |
| LT. DELMER TATE, ET AL., | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendants. | ) | |

Donell J. Blount, Sr., a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendants, Virginia Department of Corrections (VDOC) prison officials, violated Blount's free exercise rights under the First Amendment to the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, et seq., and violated his right under the Eighth Amendment to be free from cruel and unusual punishment by subjecting him to harsh living conditions and using excessive force against him.

Upon review of the record, the court concludes that defendants are entitled to summary judgment on the ground of qualified immunity as to Blount's Claims 1-4, regarding religious rights and hazardous cell conditions. As to Blount's Claims 5-6, alleging two separate incidents of excessive force, the court will refer the matter to the magistrate judge.

I

Blount is incarcerated at Red Onion State Prison, and all of the alleged violations occurred at that facility. Specifically, Blount alleges the following grounds for relief:

1. On September 10, 2010, Correctional Officers Lee and Patrick entered Blount's cell while he was out and destroyed his Qur'an and his prayer necklace;

2. On November 16, 2010, the day of the Islamic "Eid Ul Adah Feast," Food Service Director James Wade failed to provide Blount's meal on a blue Common Fare tray, in violation of his religious dietary beliefs;

3. On October 30, 2010, Officers Hale and B. Mullins left Blount for four hours in a cell contaminated with another inmate's bodily waste;

4. On November 29, 2010, Property Officer Owens denied Blount's request to order "Pocket Salat," an Arabic/English religious publication;

5. On December 12, 2009, several defendants used excessive force against Blount while placing him in ambulatory restraints after Blount threw an "inappropriate substance" at a guard, or failed to prevent the use of such force;

6. On June 8, 2010, when officers came to release Blount from ambulatory restraints, he refused to cooperate with procedures, and officers used excessive force to remove the ambulatory restraints against Blount's will or failed to prevent the use of such force.

Blount sues the following Red Onion prison officials: Officers D. Lee and S. Patrick (Claim 1); J. Wade, Lt. Day, S. Patrick, and Officer Norton (Claim 2); Sgt. T. Hale and B. Mullins (Claim 3); J. Owens (Claim 4); R. Boyd, B. Large, D. Lynch, Sgt. J. White, B. Milgrim,[1] and Lt. Delmer Tate (Claim 5); and Sgt. W. Wright, Sgt. P. Payne, W. Davis, Cpt. S.

---

[1] This defendant's name is B. Milgrim, not Milgrum, as asserted by Blount. Milgrim waived service and filed a motion for summary judgment, in the interest of judicial efficiency.

Mullins, Sgt. T. Adams, and Lt. T. McCoy (Claim 6).[2] As relief in this action, Blount seeks monetary damages.

Defendants filed a motion for summary judgment as to Claims 1-4, asserting the defense of qualified immunity and also addressing the merits of these claims. When Blount served them with discovery requests, defendants moved for a protective order, asserting that they should not be burdened with responding to discovery related to Claims 1-4 until the court had ruled on their qualified immunity defense. The court granted the protective order, and directed Blount to respond to defendants' arguments on qualified immunity as to Claims 1-4. Blount filed his response, making defendants' motion ripe for disposition.

Blount amended the complaint to name new defendants in Claims 5-6. Thereafter, defendants filed a second motion for summary judgment regarding Claims 5-6, addressing the merits of these claims and claiming qualified immunity. The parties completed discovery as to Claims 5-6. Blount then filed his response to defendants' second motion, making it ripe for disposition.[3]

## II

An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[2] In Claim 4, Blount also sues John Doe defendants who are members of the Publication Review Committee ("PRC"). These individuals have never been identified or served and are not parties to this action. Moreover, for the reasons stated in this memorandum opinion, the court concludes that Blount fails to allege a factual basis for any actionable claim against any of the PRC members for violating his free exercise rights under RLUIPA or the constitution. The court summarily dismisses without prejudice all such claims against the PRC members, pursuant to 28 U.S.C. § 1915A(b)(1), as legally frivolous.

[3] In support of their motion for summary judgment (ECF No. 62), defendants present affidavits from the following prison officials: W. Davis, J. White, B. Milgrim, P. Payne, T. McCoy, W. Wright, D. Tate, S. Mullins, and V. Phipps. Blount also filed exhibits and his own affidavit in support of his response to defendants' motion for summary judgment (ECF No. 74.)

56(c). For a party's evidence to raise a genuine issue of material fact sufficient to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Then, the burden shifts to the nonmoving party to show that such an issue does, in fact, exist. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). To defeat a supported motion for summary judgment, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (omitting quotation).

### A. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (citing Saucier v. Katz, 533 U.S. 194, 206 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009)). Qualified immunity involves a two-step inquiry: (a) whether the plaintiff's allegations state a claim that defendants' conduct violated a constitutional or statutory right; and if so, (b) whether that right was clearly established. Saucier, 533 U.S. at 206. If the court determines that the facts alleged, taken in the light most favorable to the nonmovant, do not show that the officer's conduct violated a

constitutional right, then the movant is entitled to summary judgment without further discussion of qualified immunity. Id. at 201.

Under the first facet of the Saucier analysis, the court inquires whether the complaint and attachments allege "enough facts to state a [constitutional] claim to relief that is plausible on its face." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotations omitted). The court must construe the facts in the light most favorable to the plaintiff, but "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id. (internal quotations omitted). Under the second prong of the qualified immunity analysis, "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Saucier, 533 U.S. at 202.

An official can be held liable under § 1983 in his individual capacity only if his "own individual actions . . . violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2008). "[T]here is no vicarious liability under § 1983." Revene v. Charles County Comm'rs, 882 F.2d 870, 874 (4th Cir. 1989).

**1. RLUIPA Claims**

Defendants are entitled to qualified immunity as to Blount's claims under RLUIPA. This statute does not authorize a private cause of action for money damages against state prison personnel for actions taken in their official or individual capacities, because the statute does not waive the state's sovereign immunity under the Eleventh Amendment. Sossamon v. Texas, __U.S.__, 131 S. Ct. 1651, 1660 (April 20, 2011) (official capacity); Madison v. Virginia, 474 F.3d 118, 133 (4th Cir. 2006) (same); Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir. 2009)

5

(individual capacity).[4] Because Blount seeks only monetary damages in this action, defendants are immune to his claims under RLUIPA. Therefore, Blount fails to state an actionable statutory claim, and the defendants are entitled to summary judgment under the first prong of the Saucier procedure as to Blount's RLUIPA claims. 533 U.S. at 206.

Eleventh Amendment immunity does not bar Blount's First Amendment claims for damages under § 1983 against the defendants in their individual capacities, however. Lovelace v. Lee, 472 F.3d 174, 193-94 (4th Cir. 2006). The court separately addresses these claims.

### 2. First Amendment Religious Claims

The First Amendment protects an inmate's right to the free exercise of religion. U.S. Const. amend. I; Cruz v. Beto, 405 U.S. 319, 322 (1977). To state a claim that prison officials or regulations have violated an inmate's right to free exercise of religion, a plaintiff must prove that he holds a sincere religious belief, as opposed to a secular preference, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). The Supreme Court defines a "substantial burden" as one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 718 (1981), or one that forces a person to "choose between following the precepts of [his] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of [his] religion . . . on the other hand," Sherbert v. Verner, 374 U.S. 398, 404 (1963).

---

[4] The Rendelman and Sossamon decisions addressed only claims for damages against a state or state officials under the Spending Clause axis of RLUIPA. Blount fails to allege any facts suggesting that his claims against the defendants could qualify as actionable claims under the Commerce Clause section of RLUIPA. Therefore, the court concludes that defendants are entitled to qualified immunity as to all of his claims under RLUIPA.

Plaintiff must prove not only that defendants placed a substantial burden on his ability to exercise his religious practice, but also that they knowingly did so; inadvertent or negligent interference with an inmate's religious practice does not rise to constitutional proportions. See Lovelace, 472 F.3d at 194; Shaheed v. Winston, 885 F. Supp. 861, 868 (E.D.Va. 1995).

A prison policy that may substantially burden an inmate's ability to practice his religious beliefs nevertheless withstands a First Amendment challenge when it is rationally related to furtherance of a legitimate governmental or penal interest. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Turner v. Safley, 482 U.S. 78, 89-91 (1987). The Supreme Court has identified four factors to be considered: (1) whether a "valid, rational connection" exists between the regulation and a legitimate and neutral governmental interest; (b) whether alternative means of exercising the asserted constitutional right remain open to plaintiff; (c) whether accommodating the asserted right will have an adverse impact on staff, inmates, and prison resources; and (d) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns." Turner, 482 U.S. at 89-92. The availability of alternatives is not relevant if a penal regulation only limits rather than denies a constitutional right. Vester v. Rogers, 795 F.2d 1179, 1183 (4th Cir. 1986). The prisoner has the burden of proof to disprove the validity of a prison regulation pursuant to the Turner analysis. Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

### a. Religious Property Claim

Blount alleges the following sequence of events related to Claim 1. Blount left the prison to go to court on September 10, 2010, and when he returned, he found his cell contents in disarray, his prayer necklace broken, and his Qur'an "torn apart." Blount learned that

Defendants Lee and Patrick had searched his cell while he was gone. Lee "bragged in the pod to having destroyed the Qur'an [and the] necklace." Earlier that same day, Patrick threatened to assault Blount and tear up his cell. Lee and Patrick knew of Blount's Muslim beliefs, because they had seen him fasting during Ramadan and had seen him reading his Qur'an many times, and Blount had previously spoken with Lee "about Islam." Blount obtained a new Qur'an on December 16, 2010, but in the meantime, he states that he was unable to exercise his religious belief that he should study the Qur'an daily. Investigators confiscated the prayer necklace, and Blount did not obtain a replacement, leaving him unable to pray with the necklace.

Blount attempts to frame his claim as alleging that the officers intentionally interfered with his ability to practice his religious beliefs. The only legal claim Blount may assert, however, is that officers intentionally damaged Blount's property. Blount does not (and cannot) assert that a prison policy prevents him from obtaining and using religious items, like the Qur'an and the alleged prayer necklace, in his cell. The religious items damaged were Blount's personal property, just like any other book or piece of jewelry.[5]

---

[5] Blount presented this incident in his grievances as a destruction of property claim, complaining only that he wanted his religious property items replaced and not that the damage they suffered in the cell search process prevented him from practicing his religious beliefs. His failure to present a claim of interference with his practice of religious beliefs through the grievance procedures, as required under 42 U.S.C. § 1997e(a) before he may bring a prisoner civil rights action on the matter, is an alternative ground on which this § 1983 claim fails under the first prong of the Saucier analysis.
  Even if Blount could overcome the exhaustion barrier, defendants are entitled to qualified immunity. Blount relies on reported comments from Patrick and Lee in his attempt to prove that Patrick and Lee knew their actions would prevent Blount from practicing his beliefs. In a property claim, however, the intent of the officer does not recast a state tort claim for reimbursement into a constitutional claim. Hudson, 468 U.S. at 533. Moreover, Blount's allegations that the items were torn and broken are inconsistent with Lee's alleged brag that he destroyed the items, and Patrick's alleged threat did not relate in any respect to Blount's religious property. In addition, Blount fails to explain his purported inability to read the torn Qur'an or use the prayer necklace despite its being broken. Blount also does not cite any Islamic belief burdened by the fact that his necklace was broken. The court is satisfied that Blount's allegations in this instance are insufficient to support a claim that Lee and Patrick took intentional actions which substantially burdened Blount's religious practice so as to state a free exercise claim actionable under § 1983. Thomas, 450 U.S. at 718.

Allegations that prison officials randomly deprived an inmate of his property, whether intentionally or negligently, do not state any constitutional claim "if a meaningful post-deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Blount has tort remedies under Virginia state law to recover the value of the damaged property items. See Virginia Code § 8.01-195.3. Blount cannot show that any defendant violated his constitutional rights based on the property loss alleged in Claim 1. Defendants are entitled, therefore, to qualified immunity on this claim. See Saucier, 533 U.S. at 206.

### b. Improper Food Tray

Blount supports Claim 2 with the following alleged sequence of events. On November 16, 2010, Blount intended to celebrate the Islamic Eid Ul Adah Feast and expected to receive his special meal for this midday feast on the blue trays used for Common Fare meals. The Common Fare diet, the VDOC's religious diet for several religious groups of inmates, including Muslims, is served on blue, kosher trays that have never been used to serve pork. Regular prison meals are served on tan trays. The officers brought Blount his feast meal on a tan tray. Blount refused to eat the food at first, since it was not on a blue tray. When he complained that he needed a "Common Fare tray," the officers inquired with the kitchen staff and informed Blount that the kitchen was not sending blue Common Fare trays to the housing unit that day. At that point, to avoid going hungry, Blount accepted the tan tray and ate the food. Blount sues Food Service

Director, J. Wade, for "forc[ing]" Blount to eat food from a non-kosher tray, an act which allegedly "defiled his body" and violated his Islamic beliefs.[6]

The court concludes that these allegations do not state a plausible constitutional claim. Blount admits that prison officials prepared a special feast meal in an attempt to accommodate Muslim inmates' religious practices. Blount does not allege that any of the foods he ate violated his religious beliefs or that the defendants required him to eat those foods. Blount admits that he chose to eat the meal from the tan tray only to avoid being hungry.[7] The prospect of missing one meal did not constitute "substantial pressure" for Blount to violate his religious beliefs by eating from the tray he believed to be non-kosher.[8] Thomas, 450 U.S. at 718. As Blount's allegations in Claim 1 fail to state a constitutional claim, defendants are entitled to qualified immunity under the first facet of the Saucier procedure, and the court will grant their motion for summary judgment on this ground. 533 U.S. at 206.

### c. Arabic Religious Publication

Blount's allegations related to Claim 4 are brief. Blount requested permission to order and possess an Islamic publication called "Pocket Salat," which Blount describes as "an

---

[6] In Claim 2, Blount also sues Lt. Day and S. Patrick, who fed the inmates in Blount's pod that day, and Officer Norton, who recorded these events with a camcorder. Because Blount fails to state facts concerning any respect in which these defendants were personally involved in planning the feast accommodations that he challenges, he fails to state any actionable claim against them under § 1983. Iqbal, 129 S. Ct. at 1949. Therefore, Day, Patrick, and Norton are entitled to summary judgment on the ground of qualified immunity under the first prong of the Saucier procedure as to Blount's Claim 2. 533 U.S. at 206.

[7] Wade's affidavit indicates that kitchen staff served the November 15, 2010 feast meal on tan trays, but offered inmates an opportunity, in advance, to request a Common Fare meal on a blue tray instead. Wade states that after Blount refused to accept the feast meal on the tan tray, security officers requested a Common Fare meal for him, which kitchen staff prepared and sent to the cell block. By the time this meal arrived, Blount had already accepted and eaten the meal from the tan tray, and staff cannot give an inmate two meal trays.

[8] See, e.g., Joseph v. Ware, Civil Action No. 07-1297, 2007 WL 4144923, *2 (W.D. La. Oct. 22, 2007) (finding alleged failure of prison employees to provide a pork-free meal on one occasion was not sufficient burden on inmate's free exercise rights to implicate the First Amendment) (citing other cases).

Arabic/English transliteration of how to perform the various aspects of the Islamic prayer – salat." VDOC officials had approved the publisher of Pocket Salat, American Arab Message, as a vendor from which inmates could order publications. On November 29, 2010, Red Onion property officer Owens denied Blount's request to order Pocket Salat, because that item appeared on the Publications Review Committee ("PRC") "disapproved [publications] list." Blount filed a grievance, stating that disapproval of Pocket Salat denied him the right to freely exercise his sincerely held religious belief to study Islamic literature and that no one had given him the reason for disapproval of the publication. Blount admits that Pocket Salat is not on any "disapproved publications list" now, but Blount seeks compensatory damages for the past alleged violation of his rights.

Blount's complaint and attachments fail to state any respect in which denial of Pocket Salat pressured Blount "to modify his behavior and to violate his beliefs," so as to constitute a "substantial burden" on his religious practice. Thomas, 450 U.S. at 718. Given this deficiency, the complaint does not allege facts stating a violation of Blount's free exercise rights, and defendants are entitled to qualified immunity under the first prong of Saucier. 533 U.S. at 206.

In response to the motion for summary judgment, Blount states that receiving Pocket Salat would allow Blount to learn to perform salat in Arabic, as Muslims are required to do. Even assuming without finding that these additional details show that the temporary disapproval of Pocket Salat placed some burden on Blount's ability to practice a particular tenet of his religion, such a burden negligently imposed does not support a constitutional claim. Lovelace, 472 F.3d at 194. Blount states no facts suggesting that Officer Owen or the members of the PRC knew that their actions infringed on Blount's religious practice.

The court finds that Blount has not offered evidence to prove a constitutional violation under the balance of factors required under Turner, 482 U.S. 78, 89-91. Legitimate security interests allow officers to restrict inmates' access to publications with non-English language passages, because officials would not know the information stated in such passages. Obtaining translation services for each such publication would involve expenditure of extra funds and staff time loss, thus adversely affecting limited prison resources at Red Onion, and Blount fails to provide any readily available alternatives.[9] Blount had other means to exercise his Muslim beliefs, such as celebrating Ramadan, receiving the Common Fare diet, and using his prayer rug. In such circumstances, Blount simply cannot carry his burden of persuasion under Turner and Lovelace to allege facts showing that prison officials knowingly violated his free exercise rights. Overton, 539 U.S. at 132. Thus, Blount fails to show that his inability to order Pocket Salat gave rise to an actionable constitutional claim. Defendants are entitled to qualified immunity under the first prong of Saucier, 533 U.S. at 206, and the court grants defendants' motion for summary judgment on that ground.

### 3. Hazardous Cell Conditions

In Claim 3, Blount alleges the following scenario. On October 30, 2010, an inmate flooded his toilet in the cell adjacent to Blount's cell, causing water tainted with bodily waste to overflow out of that inmate's cell into Blount's cell. When Officers Hale and B. Mullins came to clean Blount's cell, he refused to kneel on the soiled floor to be shackled as procedures required for removal from the cell. Blount remained in the cell for four hours before another shift of

---

[9] See, e.g., DePaola v. Fleming, Case No. 7:10CV00561, 2012 WL 293293, *2 (W.D. Va. Jan. 31, 2012) (rejecting First Amendment challenge regarding denial of inmate's request for publication including passages in language other than English on ground that item presents a legitimate security concern because VDOC "prison officials do not readily know [the] contents [of the non-English portions], and the VDOC does not have the resources to translate each foreign language article or publication that comes into a facility").

officers cleaned the cell. Blount asserts that the smell of the waste made Blount "extremely sick to [his] stomach, extreme anxiety" and that leaving him in the tainted cell was cruel and unusual punishment, in violation of the Eighth Amendment.

To state a prima facie claim that the circumstances of November 29, 2010 deprived him of rights protected under the Eighth Amendment, Blount must forecast evidence demonstrating that: (1) defendants acted with deliberate indifference–meaning the officers knew, subjectively, that the challenged condition created a substantial risk of harm and responded unreasonably to that risk, Farmer v. Brennan, 511 U.S. 825, 837 (1994); and (2) objectively, defendants' failure to address the condition caused Blount a serious or significant mental or physical injury, Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993). Uncomfortable, harsh, and even disgusting conditions are not unconstitutional, absent these showings.

Blount's allegations fail under both parts of this Eighth Amendment standard. Blount does not state facts indicating defendants knew the conditions posed a serious risk of significant injury to Blount. When they, nevertheless, offered to move Blount immediately from the tainted cell to have it cleaned, Blount admits that he refused to kneel, thus failing to comply with the officers' reasonable attempts to follow standard restraint procedures. Whatever nausea Blount may have suffered from staying in the cell resulted from his own choice, and not from defendants' deliberate indifference. Farmer, 511 U.S. at 837. Moreover, the temporary nausea and anxiety Blount describes do not constitute a serious or significant injury as required under Strickler, 989 F.2d at 1380-1381.[10] Under the first facet of the Saucier procedure, defendants are

---

[10] See also Beverati v. Smith, 120 F.3d 500, 505 n.5 (4th Cir. 1997) (finding that inmates' alleged confinement for six months in unbearably hot cells, infested with vermin and smeared with urine and feces, with only cold food in smaller portions, less frequent changes of linen and fewer opportunities for recreation than the general population, did not state Eighth Amendment conditions claim based on lack of evidence that conditions "resulted in serious physical or emotional injuries or the grave risk of such harm").

13

entitled to qualified immunity as to Blount's Claim 3, and the court grants their motion for summary judgment on that ground.

### 4. Pending Motions

Because the court finds that deficiencies in the complaint and attachments entitle defendants to summary judgment on qualified immunity grounds as to Claims 1-4, Blount is not entitled to discovery as to these claims. On this basis, the court will deny his pending discovery motions (ECF Nos. 27 and 30).

## B. Excessive Force Claims

The court has carefully reviewed Blount's allegations in Claims 5 and 6, alleging that various defendants used excessive force against him or failed to protect him from others' use of excessive force, and has also reviewed defendants' motion for summary judgment (ECF No. 62) and supporting documentation as to these claims. Upon reflection, the court finds it appropriate to take defendants' motion under advisement and refer these matters to the magistrate judge.

The magistrate judge may determine that limited expansion of the record is required to decide the motion. During discovery, the parties discussed video footage of the incidents at issue, but none of that video footage is currently before the court. Moreover, defendants have not provided any specific information about the inmate control techniques that Blount challenges in these claims. Therefore, the court will refer the matter to Hon. Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for further proceedings, including a hearing on defendants' motion for summary judgment, if necessary. Judge Ballou will prepare a report stating findings of fact, conclusions of law, and recommended disposition of defendants' motion.

## III

For the reasons stated, the court grants defendants' motion for summary judgment (ECF No. 18) as to Claims 1 through 4 on the ground of qualified immunity; denies Blount's pending motions for additional discovery (ECF Nos. 27 & 30) as moot; summarily dismisses without prejudice Blount's claim against the John Doe members of the PRC, pursuant to § 1915A(b)(1), as legally frivolous; and takes under advisement defendants' motion for summary judgment as to Claims 5 and 6. The matters remaining before the court will be referred to the magistrate judge for further proceedings. An appropriate order will issue herewith.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 26th day of March, 2012.

_____
Chief United States District Judge