CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 2 1 2012

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DONELL J. BLOUNT, SR.,              )
                                    )      Civil Action No. 7:11CV00091
        Plaintiff,                  )
                                    )      **MEMORANDUM OPINION**
v.                                  )
                                    )      By: Hon. Glen E. Conrad
LT. DELMER TATE, et al.,            )      Chief United States District Judge
                                    )
        Defendants.                 )


Donell J. Blount, Sr., a Virginia inmate proceeding pro se, filed this civil rights action

pursuant to 42 U.S.C. § 1983, asserting violations of his rights under the First and Eighth

Amendments to the United States Constitution and the Religious Land Use and Institutionalized

Persons Act. On March 26, 2012, the court granted the defendants' motion for summary

judgment as to the plaintiff's first four counts, and referred the remaining two counts to a United

States Magistrate Judge for appropriate proceedings, pursuant to 28 U.S.C. § 636(b)(1)(B). The

case is presently before the court for review of the magistrate judge's report and

recommendation.

### Procedural Background

Blount is incarcerated at Red Onion State Prison ("Red Onion") in Pound, Virginia. In

both of his remaining counts, Blount alleges that various correctional officers at Red Onion

violated his Eighth Amendment right to be free from cruel and unusual punishment. As set forth

in the report and recommendation, the claims that remain are as follows:

> 5. On December 12, 2009, W. Davis, R. Boyd, B. Large, D. Lynch, [and]
> Sgt. J. White used excessive force against Blount while placing him in ambulatory
> restraints after Blount threw an "inappropriate substance" at officers, and Lt.
> Delmer Tate and B. Milgrum, as camcorder operator, failed to intervene; and

> 6. On June 8, 2010, Sgt. W. Wright, W. Davis, Cpt. S. Mullins, and Sgt. P. Payne . . . used excessive force to remove the ambulatory restraints, and Investigator Tony Adams and camcorder operator Lt. T. McCoy failed to intervene.

(Report & Recommendation at 2.)

Based on the court's initial review of the parties' arguments and the existing evidence, the court found it appropriate to refer the claims to the magistrate judge for further proceedings. The court noted that the magistrate judge may determine that limited expansion of the record was appropriate, given that the parties had discussed video footage of the incidents at issue, but none of the video footage had been provided to the court.

Thereafter, the magistrate judge ordered the defendants to submit copies of any available video or surveillance camera footage related to the two incidents at issue, as well as any policies related to the physical control techniques allegedly used by the defendants. The defendants subsequently submitted, for in camera review, several written policies and training materials responsive to the magistrate judge's order, along with DVDs of the available video footage.

Upon reviewing the evidence, including the additional materials submitted by the defendants, the magistrate judge found that "no genuine issues of material fact remain in dispute on which Blount could prove that the defendants' actions at issue violated his constitutional rights." (Report & Recommendation at 1.) Accordingly, the magistrate judge recommended that the court grant the defendants' motion for summary judgment as to both of Blount's remaining counts. Blount subsequently filed a number of objections to the magistrate judge's report.

## Standards of Review

The magistrate judge makes only a recommendation to this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The magistrate judge's report has no presumptive weight, and the responsibility to make a final determination remains with this court. Id. at 270-71. The court is

charged with making a <u>de novo</u> determination of those portions of the report and
recommendation to which specific objections are made. 28 U.S.C. § 636(b)(1). The court "may
accept, reject, or modify, in whole or in part, the findings or recommendations made by the
magistrate judge." <u>Id.</u> The court may also receive further evidence or recommit the matter with
instructions. <u>Id.</u>

Under Rule 56 of the Federal Rules of Civil Procedure, an award of summary judgment is
appropriate only "if the movant shows that there is no genuine dispute as to any material fact and
the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a party's
evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such
that a reasonable jury could return a verdict for the non-moving party." <u>Anderson</u>, 477 U.S. at
248. "In reviewing the evidence, the court must draw all reasonable inferences in favor of the
nonmoving party and may not make credibility determinations or weigh the evidence." <u>Williams
v. Staples, Inc.</u>, 372 F.3d 662, 667 (4th Cir. 2004); <u>see also</u> <u>Gray v. Spillman</u>, 925 F.2d 90, 95
(4th Cir. 1991) (at this stage of the proceedings, "[i]t is not [the court's] job to weigh the
evidence, to count how many affidavits favor the plaintiff and how many oppose him, or to
disregard stories that seem hard to believe").

**<u>Discussion</u>**

Both of Blount's remaining counts arise under the Eighth Amendment, which expressly
prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. In the
prison context, the amendment "protects inmates from inhumane treatment and conditions while
imprisoned." <u>Williams v. Benjamin</u>, 77 F.3d 756, 761 (4th Cir. 1996). To determine whether a
prison official has violated the Eighth Amendment, courts must analyze both subjective and
objective components. <u>Id.</u> Specifically, this analysis requires "inquiry as to whether the prison

3

official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation or injury inflicted on the inmate was sufficiently serious (objective component)." Id. The specific showing necessary to establish each component "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992).

When an inmate claims, as Blount does here, that prison officials used excessive force in violation of the Eighth Amendment, he must meet a heavy burden to satisfy the subjective component. See Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The inmate must demonstrate that the prison officials applied force "maliciously and sadistically for the very purpose of causing harm," rather than as part of "a good faith effort to maintain or restore discipline." Id. On the other hand, the objective component of an excessive force claim is less demanding, because "[w]hen prison officials maliciously and sadistically use force to cause harm, . . . contemporaneous standards of decency always are violated[,] whether or not significant injury is evident." Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010) (internal citation and quotation marks omitted). In addressing this component, the court considers whether the nature of the force applied was "nontrivial." Id. (noting that "[a]n inmate who complains of a [mere] 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim") (quoting Hudson, 503 U.S. at 9.)

To satisfy the subjective component of an excessive force claim, an inmate must show that a prison official acted with a "sufficiently culpable state of mind." Wilson, 501 U.S. at 297. In the excessive force context, that state of mind is "wantonness in the infliction of pain." Whitley, 475 U.S. at 322. In determining whether a prison official has acted with wantonness, the court may consider such factor as: (1) the need for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury;

4

(4) the extent of the threat reasonably perceived by the responsible officials based on the facts known to them; and (5) any efforts made to temper the severity of a forceful response. Id. at 321. "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Id.

## I.    Count 5:  Use of Force on December 12, 2009

On the evening of December 12, 2009, officers at Red Onion made the decision to place Blount in ambulatory restraints, after he threw an "inappropriate concoction" through the food tray slot in his cell door.  (Compl. at 6.)  In accordance with the prison's standard procedures, Blount was removed from his cell with his hands cuffed behind his back.

Officers then escorted Blount to the vestibule, where he knelt to remove his clothing and regular restraints, and to apply the ambulatory restraints, which require the inmate's hands to be in front of his body.  The rapid eye camera footage shows as many as twelve officers in the vestibule as officers prepared to move Blount's hands from behind his back to apply the ambulatory restraints.  Two officers were hunched on either side of Blount, each holding one of Blount's arms.  A third officer stood behind Blount to unlock his handcuffs, and a fourth officer stood in front of Blount.

The parties agree that defendant Boyd was positioned on Blount's left, and that defendant Davis was on the right, as an officer released one of Blount's hands from its handcuff and began to move Blount's hands toward the front of his body.  Blount suddenly moved forward at this transition, when neither hand was restrained, and struck Sergeant Lyall, who was standing in front of Blount.  Thereafter, the officers immediately placed Blount face down on the floor and applied the ambulatory restraints.  Blount was helped to his feet and placed in a blanket-like

smock that covered him from the neck to his knees.  Medical personnel were then called to assess Blount's reported injuries.  Upon the completion of the medical assessment, the officers escorted Blount to his cell where he remained in ambulatory restraints until he was released on December 14, 2009.

As the magistrate judged noted in his report, "[t]he parties sharply dispute the nature of Blount's sudden movement toward Lyall, his behavior after officers placed him on the floor, and the actions the officers took in the course of getting the ambulatory restraints applied while he was on the floor."  (Report & Recommendation at 12.)  Blount claims that Davis and Boyd intentionally bent his fingers and pushed him toward Lyall in order to simulate aggressive or resistant behavior, and that he "at NO time . . . tr[ied] to hit Lyall" on his own.  (Compl. at 6) (emphasis in original).  Blount further alleges that the amount of force that was subsequently employed by the officers was disproportionate to his behavior in the vestibule.  Specifically, Blount alleges that the officers "choked [him], tried to squeeze [his] testicles, dug metal restraints into [his] ankles and feet, dug a finger in [his] left eye . . . and fingers into [his] nostrils pulling them upwards toward his forehead, and . . . bent [his fingers] backwards until [he] though they were broken."  (Id.)

The defendants filed affidavits contradicting Blount's account of the incident.  According to defendant Davis, Blount managed "to jerk his arm away from [Davis] . . . and . . . struck Sergeant Lyall in the stomach."  (Davis Affid. ¶ 5.)  Davis asserts that after the officers saw Blount strike Lyall, they placed him face down on the floor and used "pressure points and wrist locks" to bring Blount under control to apply ambulatory restraints.  (Id.)  The officers contend that Blount continued to resist their attempts to control him, and that they were ultimately required to apply the ambulatory restraints while Blount was lying on the floor.

6

Based on his review of the record, the magistrate judge recommended that summary judgment be awarded in favor of all five of the defendants implicated in the excessive force portion of Count 5.[1]  Focusing solely on the subjective component of the Eighth Amendment analysis and the applicable factors set forth in Whitley, 475 U.S. at 320-21, the magistrate judge found that "no reasonable fact finder could conclude that on December 12, 2009, the officers wantonly applied force with an intent to punish Blount."[2]  (Report & Recommendation at 28.)

Having reviewed the evidence submitted by the parties, the available video footage, and the objections submitted by the plaintiff, the court adopts the magistrate judge's recommendation with respect to defendants Large, Lynch, and White, the three defendants who responded to Blount's sudden movement toward Lyall and participated in securing Blount in ambulatory restraints.  These defendants, having witnessed Blount's sudden movement toward Lyall, reasonably perceived a threat of violence which required the use of force, and made the split-second decision to take Blount to the floor to regain control of the situation.  After balancing the Whitley factors, the court agrees with the magistrate judge that, based on the record, no reasonable fact finder could conclude that Large, Lynch, and White used force "maliciously and sadistically for the very purpose of causing harm," rather than as part of a "good faith effort to maintain or restore discipline."  Whitley, 475 U.S. 320-21.

---

[1] Those defendants are Davis, Boyd, Large, Lynch, and White.  See Report & Recommendation at 28 n. 13.

[2] The magistrate judge recognized that Blount's injuries were not so minimal as to support a finding that defendants used only trivial force against Blount, as necessary to support a finding in the defendants' favor under the objective component of the analysis.  As the magistrate judge noted in his report, "[t]he undisputed evidence indicates that Blount sustained injuries from this incident, including swollen fingers, a hematoma in his left eye, superficial abrasions near his eye and on his hand and neck, and a knot on his foot that affected his ability to walk for a day or two."  (Report & Recommendation at 23.)

On the other hand, the court is unable to adopt the magistrate judge's recommendation with respect to Davis and Boyd, the two defendants whose conduct allegedly brought about the incident at issue. As the magistrate judge recognized in his report, "factual conflicts exist as to whether [Davis and Boyd] pushed Blount towards Lyall or he intentionally moved in that direction." (Report & Recommendation at 27.) Unfortunately, a review of the available video footage, the primary purpose for which the court referred the remaining claims, fails to confirm either side's version of the incident. As the magistrate judge noted in his report, the rapid eye footage shows that Blount's left arm, and the officer holding that arm, moved suddenly toward Lyall. However, "the video does not show the exact moment when the movement started." (Report & Recommendation at 14.) Likewise, the footage from a handheld video camera fails to verify the cause of Blount's sudden movement, since the officer standing behind Blount momentarily blocked the camera's view as the movement toward Lyall began.

While the magistrate judge ultimately found this factual dispute to be immaterial to the Eighth Amendment analysis, the court is unable to agree. Construed in the light most favorable to Blount, the evidence permits a finding that Davis and Boyd intentionally bent his fingers and shoved him toward Lyall in order to simulate aggressive behavior, and that, without these intentional acts, Blount would not have been subject to the acts of force and accompanying injuries which subsequently occurred. While "[a]n inmate who complains of a [mere] 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim," Wilkins 130 S. Ct. at 1178, the same cannot be said of a wanton physical act that ultimately results in bodily injury. Assuming the truth of Blount's sworn statements, as the court must do at this stage of the proceedings, a reasonable fact finder could conclude that Davis and Boyd acted with malicious and sadistic intent, and that their actions were not part of a good faith

8

effort to maintain discipline. <u>Whitley</u>, 475 U.S. at 320-21.  Accordingly, the defendants' motion for summary judgment will be denied with respect to Blount's claim of excessive force against Davis and Boyd.[3]

## II.   Count 6: Use of Force on June 8, 2010

On June 6, 2010, Blount was placed in ambulatory restraints after stopping up his toilet and flooding his cell, and subsequently spraying an officer with what appeared to be feces.  Two days later, Captain Mullins ordered defendants Davis, Payne, and Wright to dress in protective gear to release Blount from ambulatory restraints.  Blount subsequently refused to cooperate with the de-cuffing procedures, stating that he was afraid that Davis and Wright would assault him. Mullins nonetheless insisted that Blount be released from restraints and ordered Davis and Wright to bring Blount out of his cell.

Under threat of force, Blount exited his cell and sat in a wheelchair.  He then threatened to "attack someone" if he was released from restraints.  (Compl. at 6.)  Undeterred by the plaintiff's threats, the officers wheeled Blount out of the pod into the vestibule and placed him on his knees.  As the officers attempted to remove the ambulatory restraints, Blount balled his hands into fists.  Consequently, Davis attempted to place his fingers between Blount's closed fingers.  Davis subsequently yelled that Blount was bending his fingers, and Wright yelled that Blount had tried to bite him.

At this point, as the magistrate judge noted in his report, the parties' accounts diverge. Blount contends that he was never resistant or assaultive, and that he did not bite anyone.  He claims that Davis "d[ug] . . . fingers into [his] pressure points of [his] neck as someone bent [his]

---

[3] Blount did not specifically object to the magistrate judge's recommended disposition of the portion of Count 5, which asserted that defendants Tate and Milgrum failed to protect Blount.  Thus, the court will adopt the magistrate judge's conclusions with respect to those portions of Count 5 and grant summary judgment in favor of Tate and Milgrum.

9

fingers back until [he] felt like they were broken." (Blount Affid. ¶ 3D.) Blount alleges that he "felt like [he] was choking [and] there was extreme pain in [his] neck." (Id.)

For their part, the officers state that Blount tried to bite Davis's hand as Davis attempted to remove the lock from the ambulatory restraints, and that the officers then took Blount to the floor to regain control of him. Davis reports that he used "pressure points" to regain control of Blount's head until Blount complied with the officers' directives. Once the officers regained control of Blount, they returned him to his cell, where he remained in ambulatory restraints for another 24-hour period. When officers released Blount from restraints on June 9, 2010, the nurse observed a superficial scrape on his right wrist and applied a band-aid, but noted no other injuries or complaints. X-rays of Blount's right hand and wrist, taken after he complained of injury, were normal.

After considering the factors set forth in Whitley, the magistrate judge determined that Blount failed to present sufficient evidence from which a reasonable fact finder could conclude, under the subjective inquiry of the Eighth Amendment analysis, that the officers wantonly applied force to Blount for the very purpose of causing harm. Having reviewed the record de novo, the court agrees with the magistrate judge and adopts his recommended disposition of this claim.

As the magistrate judge noted in his report, Blount admittedly threatened to harm someone if released from restraints and then refused to cooperate with the normal process for removing them. At the start of the process, Blount chose to ball up his hands to frustrate the officers' efforts to remove the hand restraints. The court agrees with the magistrate judge that this action called for intensified physical measures to remove the restraints, and that "[t]he

10

measured force the officers exercised to address Blount's non-compliance – taking Blount to the floor and applying physical holds to maintain control and remove the restraints – related directly to the need for force that Blount's actions created." (Report & Recommendation at 30.) Moreover, the injuries of which Blount complained to medical staff did not require extensive treatment and were not inconsistent with the type and amount of force required to remove the restraints without Blount's cooperation.

In sum, applying all of the factors set forth in Whitley, the court agrees with the magistrate judge's determination that no reasonable fact finder could conclude that Wright, Davis, or Payne applied force "maliciously and sadistically" in order to harm Blount. Whitley, 475 U.S. at 320-21. Instead, "the evidence supports a reasonable inference that the officers applied the force they believed was necessary to restore order, given Blount's uncooperative behavior." (Report & Recommendation at 31.) Accordingly, the court will adopt the magistrate judge's recommended disposition and grant summary judgment in favor of Wright, Davis, and Payne, with respect to this claim.[4]

### Conclusion

For the reasons stated, the magistrate judge's report and recommendation is adopted in part and rejected in part, and the defendants' motion for summary judgment will be granted in part and denied in part. The case will proceed to trial on the plaintiff's claim of excessive force against Davis and Boyd, which is based on the incident that occurred on December 12, 2009.

---

[4] Blount did not specifically object to the magistrate judge's recommended disposition of the portion of Count 6, which asserted that defendants Mullins, Adams, and McCoy failed to protect him. Accordingly, the court will also adopt the magistrate judge's conclusions with respect to those portions of Count 6, and grant summary judgment in favor of Mullins, Adams, and McCoy.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the plaintiff and all counsel of record.

ENTER: This _____ day of September, 2012.

_____
Chief United States District Judge